COPY

1  Craig J. Mariam (SBN 225280)
   Email: cmariam@gordonrees.com
2  Robert L. Uriarte (SBN. 258274)
   Email: ruriarte@gordonrees.com
3  GORDON & REES LLP
   633 W. 5th Street, 52nd Floor
4  Los Angeles, CA  90071
   Telephone:  (213) 576-5000
5  Facsimile:   (877) 306-0043

6  Attorneys for plaintiffs
   Rysher Entertainment, Inc., Qualia Capital, LLC,
7  Bing Crosby Productions, LLC

FILED
CLERK U.S DISTRICT COURT

NOV - 8 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10  RYSHER ENTERTAINMENT, INC.;          )  CASE NO.
    QUALIA CAPITAL, LLC; BING CROSBY     )  CV11- 09298 SVW (MANx)
11  PRODUCTIONS, LLC,                    )
                                         )  **COMPLAINT FOR**
12                        Plaintiffs,    )  **DECLARATORY JUDGMENT**
                                         )
13          vs.                          )
                                         )
14  WRITERS GUILD OF AMERICA-WEST,       )
    Inc.; ALBERT S. RUDDY, an individual;)
15  and KAY FEIN, an individual, as heir of )
    BERNARD FEIN,                        )
16                                       )
                        Defendants.      )
17  _____ )

18          **COMPLAINT FOR DECLARATORY JUDGMENT**

19          Plaintiffs Rysher Entertainment, Inc., Qualia Capital, LLC, and Bing Crosby

20  Productions, LLC ("BCP"), for their complaint against Writers Guild of America-

21  West, Inc. ("WGA"), Albert S. Ruddy, and Kay Fein, allege as follows:

22          **INTRODUCTION AND SUMMARY OF THE ACTION**

23          1.      Plaintiff seeks declaratory judgment that defendants' claims

24  concerning certain literary material described by them as "Hogan's Heroes" are not

25  subject to the jurisdiction of the WGA through its formal dispute resolution

26  process.

27  / / /

28  / / /

-1-
COMPLAINT

**JURISDICTION AND VENUE**

2.  This action arises under the copyright laws of the United States as set forth in the Copyright Act, 17 U.S.C. § 101 *et seq.*, under the Federal Declaratory Judgment Act, 28 U.S.C. § § 2201-2202, and under the statutory and common law of the State of California.

3.  Subject mater jurisdiction is conferred on this Court by 28 U.S.C. § 1331, § 1338(a), and § 2201 *et seq*.

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), 1391(c) and 1400(a).

**PARTIES**

5.  Plaintiff Rysher Entertainment, Inc. is a California corporation with its principal place of business at 2401 Colorado Avenue, Suite 200, Santa Monica, CA 90404 and is the successor-in-interest or parent company of plaintiff Bing Crosby Productions, LLC.

6.  Plaintiff Qualia Capital, LLC is a New York limited liability company with its principal places of business at Carnegie Hall Tower, 152 West 57th Street, 25th Floor, New York, NY 10019.  Qualia is a principal investment firm specializing in debt and equity investments and in media and entertainment sectors with an emphasis on intellectual property asset portfolios.  Qualia is headquartered in New York City.

7.  On information and belief, defendant Kay Fein is an individual residing in the County of Los Angeles,  State of California.  Ms. Fein is the widow of Bernard Fein, co-creator of The Heroes, which ultimately became known as Hogan's Heroes.

8.  On information and belief, defendant Albert S. Ruddy is an individual residing in the County of Los Angeles, State of California.  Mr. Ruddy is the co-creator, with Mr. Fein, of The Heroes, which ultimately became known as Hogan's Heroes.

1    9.    On information and belief, WGA is a California corporation with its

2    principal place of business located at 7000 West Third Street, Los Angeles, CA

3    90048.  WGA is a labor union representing film, television, radio and new media

4    writers. Plaintiffs incorporate by reference all of the above paragraphs of this

5    Complaint as though fully stated herein.

6                        **The Operative Agreements**

7    10.    In 1963, Bernard Fein and Albert S. Ruddy co-wrote a literary work

8    entitled *"The Heroes"* which ultimately became the television show *"Hogan's*

9    *Heroes."*

10    11.    On October 22, 1964, BCP, Bernard Fein, and Albert S. Ruddy

11    executed a Letter Agreement pursuant to which Mssrs. Fein and Ruddy sold

12    literary property comprised of *The Heroes* and all associated rights.  (Letter

13    Agreement and Assignment of Rights, Attached Hereto as Exhibit "A").  Mssrs.

14    Fein and Ruddy each executed an Assignment of Rights ("Assignment")

15    conveying all of their rights in *The Heroes* to BCP pursuant to the Letter

16    Agreement.  (*See* Assignment of All Rights, Exhibit A).

17    12.    The assignment transferred "all rights" to the "story and underlying

18    literary property" to BCP.  (Assignment of All Rights, Exhibit A, ¶ 1.)  The

19    assignment further gave BCP the "absolute and unqualified" right to use the work

20    in whatever manner BCP may have decided, including specifically the right to

21    make a motion picture. (Assignment of All Rights, Exhibit A, ¶ 2).

22    13.    After the original teleplay, *The Heroes*, was created by Mssrs. Fein

23    and Ruddy (thereafter purchased by BCP), BCP entered into a series of writing

24    service agreements with the same writers pursuant to which Mssrs. Fein and Ruddy

25    wrote and revised pilot scripts for *The Heroes*.  These subsequent writing services

26    agreements are not the direct subject of the instant declaratory judgment claim;

27    however, there are various facts arising out of these agreements that are relevant.

28    14.    For example, unlike the Letter Agreement and Assignment, the

writing services agreements incorporated by reference and are governed by the 1960 Writers Guild of America Basic Agreement-ATP-Independent ("1960 Independent Agreement").  Mssrs. Fein and Ruddy acknowledged within their employment agreements that they were being hired to work on an "established episodic series" within the meaning of the 1960 Independent Agreement and that the underlying literary property was owned by their employer, BCP.  The Letter Agreement and Assignment contained no such incorporation of the 1960 Independent Agreement.

15.     In fact, the employment agreements by and between BCP, on the one hand, and Mssrs. Fein and Ruddy, on the other hand, provide that the writers have "no claim or right to separation of rights under Article XX of the 1960 WGA Basic Agreement [ATP-Independent]." (Employment Agreement, Exhibit "B", ¶ 2(b).) .

16.     During and after the time in which *Hogan's Heroes* was on the air, and with, at a minimum, constructive knowledge of Mssrs. Fein and Ruddy, BCP took actions, such as exercising merchandising rights in Hogan's Heroes, that were inconsistent with the current notion put forth by defendants that Mssrs. Fein and Ruddy retained separated rights under the 1960 Independent Agreement.

**The WGA's Claim for Arbitration**

17.     On October 21, 2011, the WGA submitted a claim for arbitration seeking a declaration by a single arbitrator that Mssrs. Ruddy and Fein own the separated rights in Hogan's Heroes, including but not limited to theatrical motion picture rights.  (Arbitration Claim, Attached Hereto as Exhibit "C").  WGA's claim for arbitration asserts that the disputed claims are subject to arbitration under the provisions of the 1960 Independent Agreement.  However, plaintiffs dispute that contention.

18.     *Arguendo* there were a binding arbitration clause at issue, here, WGA's claim for arbitration violates the arbitration procedures set forth in the 1960 Independent Agreement.  Among other things, the arbitration provisions of

1   the 1960 Independent Agreement require certain disputes to be adjudicated by a

2   panel of three arbitrators, and WGA is seeking adjudication by a single arbitrator.

3   Further, the arbitration provisions of the 1960 Independent Agreement require the

4   WGA to follow a specified grievance procedure.  WGA failed to comply with

5   these provisions.

6        19.    WGA's claim for arbitration seeks to arbitrate matters that

7   procedurally barred under the 1960 Independent Agreement and that are not within

8   the jurisdiction of the WGA.  Again, among other reasons, the arbitration

9   provisions of the 1960 Independent Agreement do not permit arbitration of any

10   claim that is not filed within eighteen months of the time at which the party

11   asserting arbitration had reason to know of the claim.

### FIRST CLAIM FOR RELIEF

12
13   **(For Declaration that the Rights Granted by the Letter Agreement and Assignment Are Not Subject to Arbitration Under the Independent Agreement)**
14

15        20.    Plaintiffs incorporate by reference all of the above paragraphs of this

16   complaint as though fully stated herein.

17        21.    An actual controversy exists between plaintiffs and defendants in that

18   plaintiffs contend that the rights granted by the Letter Agreement and Assignment

19   are not subject to arbitration under the 1960 Independent Agreement, while

20   defendants contend otherwise.  Further, an actual controversy exists between the

21   parties in that plaintiffs contend the Purchase Agreement grants them unfettered

22   rights to license, sell, or option the *Hogan's Heroes* material for theatrical

23   production, while defendants contend otherwise.

24        22.    A determination of the parties respective rights regarding the actual

25   controversy alleged herein is necessary at this time in order to avoid potential harm

26   and prejudice to plaintiffs.

27   ///

28   ///

23.   Plaintiffs desire a judicial determination and declaration from this Court that the parties have not consented to arbitration through the WGA as to the dispute at issue in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully requests that this Court:

1.   Issue declaratory judgment that rights conferred by the Letter Agreement and Assignment, at issue here, are not subject to mandatory arbitration under the 1960 Independent Agreement;

2.   For attorneys' fees as may be awarded under the terms of the subject Letter Agreement And Assignment;

3.   For costs of suit herein; and

4.   For such other and further relief as the Court may deem proper.


Dated: November 8, 2011                    Respectfully submitted,


                                           GORDON & REES LLP


                               By: _____
                                           Craig J. Mariam (SBN: 225280)
                                           Robert L. Uriarte (SBN. 258274)
                                           Attorneys for plaintiffs
                                           Rysher Entertainment, Inc., Qualia
                                           Capital, LLC, Bing Crosby
                                           Productions, LLC

# Exhibit "A"

24

October 22, 1964

Messrs. Albert S. Ruddy and Bernard Fein
c/o Artists Agency Corporation
9229 Sunset Boulevard
Los Angeles 69, California

Dear Messrs. Ruddy and Fein:

The following will confirm our agreement with you:

1. For and in consideration of the sum of Five Hundred Dollars ($500.00), receipt of which is hereby acknowledged, you do hereby sell, grant, convey and assign to us, our successors, licensees and assigns exclusively and forever all right, title and interest in and to a literary property comprised of a story and all underlying literary rights thereto, entitled "THE HEROES" (which literary property is hereinafter referred to as the "work").

2. You hereby agree to sign, upon the execution hereof, an Assignment of All Rights (attached hereto as Exhibit A and by this reference made a part hereof) in and to the work.

3. You hereby grant to us an irrevocable and exclusive option for one (1) year from the date hereof to produce, at our sole discretion, a pilot program for a series of television programs each approximately one-half (1/2) hour in length (hereinafter referred to as a "pilot") to be based upon the work. In the event that a pilot is produced at any time during said one (1) year option period, we shall have an additional option for a period of one (1) year, commencing upon completion of principal photography of said pilot, to sell a series of television programs based on the pilot to any network and/or sponsor or sponsors. Provided, however, that if either a pilot is not produced or, in the event a pilot is produced and a series of television programs is not sold to any network and/or sponsor or sponsors within the prescribed period set forth hereunder, all right, title and interest in

and to the work hereby being sold, granted, conveyed
and assigned to us shall thereupon automatically revert
to you, and we shall thereafter have no further rights
or interests therein.  Notwithstanding anything to the
contrary contained in the immediately preceding sentence, *except for the*
we shall own in perpetuity any teleplay prepared based *rights to the*
on the work and we shall have the unlimited right to use *title "The Room"*
any such teleplay in any way we see fit; and, in the event
of the production of a pilot, we shall own all right, title
and interest in and to said pilot and shall have the right
to lease, lend, license, sell and otherwise dispose of or
exploit the pilot throughout the world in perpetuity in
our sole discretion without making any further payments
to you.

　　　　　If the foregoing sets forth our mutual under-
standing and agreement, please sign in the space provided
below.

　　　　　　　　　　　Very truly yours,

　　　　　　　　　　　BING CROSBY PRODUCTIONS

　　　　　　　　　　　By _____
　　　　　　　　　　　　　Saul C. Warslow
　　　　　　　　　　　　　Vice President

ACCEPTED AND AGREED:

_____
Albert S. Ruddy

_____
Bernard Fein

　　　　　　　　　　2.

O'M & M
7/15/63

## ASSIGNMENT OF ALL RIGHTS

1.   I, Bernard Fein and Albert S. Ruddy for and in
consideration of the sum provided for in the agreement executed
concurrently herewith, have given, granted, bargained, sold,
assigned, transferred and set over, and by these presents do
give, grant, bargain, sell, assign, transfer all rights and
set over forever unto   BING CROSBY PRODUCTIONS
hereinafter referred to as the "purchaser", that certain
     story and underlying literary property
entitled        "THE HEROES"
(hereinafter referred to as the "work"), the title and theme
thereof, and all now or hereafter existing rights of every
kind and character whatsoever pertaining to said work whether
or not such rights are now known, recognized or contemplated,
and the complete, unconditional and unencumbered title in and
to said work for all purposes whatsoever.

2.   I further give, grant, bargain, sell, assign,
transfer and set over, forever, to the purchaser the sole and
exclusive, absolute and unqualified right to use said work,
in whole or in part, in whatever manner said purchaser may
decide, including (but not limited to) the right to publish
the same and to make and/or cause to be made, literary, drama-
tic, speaking stage, motion picture, photoplay, television,
radio and/or other adaptations of every kind and character of
said work, or any part thereof; and for the purpose of making
or causing to be made such adaptations or any of them, the pur-
chaser may adapt, arrange, change, novelize, dramatize, make
musical versions of, interpolate in, transpose, add to and sub-
tract from said work, and/or the title thereof, to such extent
as the purchaser in its sole discretion may desire, and may
likewise translate the same into all or any languages. The
purchaser shall have the right to use my name and likeness as
the author of the literary composition upon which said adapta-
tions, or any of them, are based; and shall have the further
right to use the title of said work in conjunction with any
adaptations of said work or any part thereof; and/or the pur-
chaser may use in connection with such adaptations, or any of
them, any other title or titles which it may select, and/or the
purchaser shall have the right to use the title of said work in
connection with any literary, dramatic or other works not based
upon said work.  The purchaser shall also have and is hereby
given the right to obtain copyright in all countries upon said
work and upon any and all adaptations thereof, including the
right of acquiring copyright in all countries upon any motion
picture based in whole or in part upon said work, and to renew
said copyrights and purchaser will have the continued right to
exercise any or all of its rights during said copyright renewal
period.  In addition, without limitation of the generality of
the foregoing, the purchaser is hereby assigned and granted all

## EXHIBIT A

claims and causes of action, both past and future, arising out of or connected with infringements of the work, and is hereby given the sole and exclusive authorization to sue upon the same in my name and/or purchaser's own name or in the name of purchaser's nominee; purchaser shall be entitled to all proceeds arising therefrom.

     3.   Without in any manner limiting or derogating from the generality of the rights hereinabove in Paragraph 1 and 2 granted to the purchaser, I hereby particularly give, grant, bargain, sell, assign, transfer and set over forever to the purchaser the sole and exclusive, absolute and unqualified motion picture rights, talking picture rights, and synchronized picture rights throughout the world in and to said work and the title and theme thereof, together with the sole and exclusive, absolute and unqualified right, license and privilege of using said work, title and theme for motion picture, talking picture, photoplay and synchronized picture purposes; also, the sole and exclusive, absolute and unqualified right to make motion picture films and photoplays based in whole or in part on said work, together with the sole and exclusive, absolute and unqualified right to sell, lease, license and generally deal and traffic in the same and/or recordation and/or the reproductions thereof throughout the world at any and all times after the execution hereof.  The term "photoplay" as used in this instrument and the agreement to which it is attached shall be deemed to include, but not be limited to, motion picture productions, produced, transmitted, and/or exhibited with sound and voice recording and reproducing devices, radio devices and all other now existing or future improvements and devices which are now or may hereafter be used in connection with the production, transmission and/or exhibition of motion picture productions.  All rights necessary to produce, transmit, and/or exhibit such motion picture or television version or versions of said work, accompanied by such sound and voice recording and reproduction devices, radio devices and all other now existing or future improvements and devices which are now or may hereafter be used in connection with the production, transmission and/or exhibition of motion picture productions, are hereby transferred and assigned to the purchaser.  The purchaser is hereby given the right to use the title of said work in conjunction with motion picture productions and photoplays based upon said work or any part thereof; but the purchaser shall not be obligated to do so and may use any other title or titles which it may select as the title of such motion picture productions and photoplays; and/or the purchaser shall have the right to use the title of said work in conjunction with motion picture productions and photoplays not based upon said work.  The provisions of this paragraph shall not be deemed or construed in any manner to limit or derogate from the generality of the full and complete rights hereinabove in Paragraphs 1 and 2 granted to the purchaser.

     4.   I hereby represent and warrant that I am the sole author and owner of said work, together with the title thereof; that I am the sole owner of all rights of any and all kinds whatsoever in and to said work, throughout the

2.

world; that there has been no publication or any other use of said work or any part thereof with my knowledge or consent anywhere in the world; that I have the sole and exclusive right to dispose of each and every right herein granted and/or purported to be granted; that neither said work nor any part thereof is in the public domain; that no motion pictures or any other works have been produced which have been based in whole or in part upon said work; that I have in no way conveyed, granted or hypothecated any rights of any kind or character in or to said work, or any part thereof, to any person whomsoever, other than the purchaser, nor have I granted any right, license or privilege with respect to any of the rights herein granted and/or purported to be granted, to any person other than the purchasers; that I have not done or caused or permitted to be done any act or thing by which any of the rights herein granted and/or purported to be granted to the purchaser have been in any way impaired; and that I will not at any time execute any further agreement or agreements in conflict herewith, nor will I in any way attempt to encumber the rights herein granted, nor will I do or cause or permit to be done any act or thing by which the rights herein granted and/or purported to be granted to the purchaser may in any way be impaired. I further represent and warrant that said work is original with me in all respects, that no incident therein contained and no part thereof is taken from or based upon any other literary or dramatic work or any photoplay, or in any way infringe upon the copyright or any other right of any individual, firm or corporation; and that the reproduction, exhibition or any other use by the purchaser of said work in any form whatsoever will not in any way, directly, or indirectly infringe upon the rights of any individual, firm, person or corporation whatsoever.

5.   I hereby appoint the purchaser my true and lawful attorney, irrevocably, but for the sole benefit of the purchaser, to institute and prosecute such proceedings as the purchaser may deem expedient to protect the rights herein granted and/or purported to be granted and/or to effect the recovery by the purchaser of damages and penalties for the infringement of said rights, and/or to secure to the purchaser the full benefit of all the rights herein granted and/or purported to be granted. The purchaser may sue in its own name and/or may use my name, and/or at its option, may join me as party plaintiff or defendant, in any suit or proceeding brought for such purpose or purposes.

6.   I hereby guarantee and warrant that I will indemnify, make good and hold harmless the purchaser of, from and against any and all loss, damage, costs, charges, legal fees, recoveries, judgments, penalties and expenses which may be obtained against, imposed upon or suffered by the purchaser by reason of any infringement or violation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of any copyright or any other right of any person, firm or corporation, or by reason of or from any use which may be made of said work by the purchaser, or

3.

by reason of the breach of any term, covenant, representation or warranty herein contained, or by reason of anything whatsoever which might prejudice the securing to the purchaser of the full benefit of the rights herein granted and/or purported to be granted.  The foregoing guarantees and warranties shall not apply to any changes in said work which may be made by the purchaser.

7.    I hereby agree duly to execute, acknowledge and deliver, and/or procure the due execution, acknowledgment and delivery to the purchaser of any and all further assignments and/or other instruments which in the sole judgment and discretion of the producer may be deemed necessary or expedient to carry out or effectuate the purposes or intent of this present instrument.

8.    The term "purchaser" as used herein shall include the purchaser herein named, and as well, its successors and assigns.  The purchaser may assign, transfer and grant all or any part of the rights herein granted it to any individual, firm, person or corporation, without limit, and shall enjoy its rights hereunder throughout the world in perpetuity and forever, as long as any rights in said work are recognized in law or in equity, except insofar as such period of perpetuity may be shortened due to any copyrighting by the purchaser of said work and/or any adaptation or adaptations thereof, in which case the purchaser shall enjoy its rights hereunder for the full duration of such copyright or copyrights, including any and all renewals thereof.

9. *
IN WITNESS WHEREOF, I have hereunto set my hand

this _____ day of _____, 196___.


_____
Bernard Fein


_____
Albert S. Ruddy


*          Wherever the pronoun "I" is used herein it shall be deemed to mean both of the undersigned in their individual capacities and jointly.

4.

# Exhibit "B"

BING CROSBY PRODUCTIONS
9229 Sunset Boulevard
Los Angeles, California 90069

October 22, 1964

Messrs. Albert S. Ruddy and Bernard Fein
c/o Artists Agency Corporation
9229 Sunset Boulevard
Los Angeles 69, California

Dear Messrs. Ruddy and Fein:

The following will confirm our agreement with you:

1.  EMPLOYMENT

(a)  We hereby employ you to render such
services as we may require in connection with the
writing and revision of the literary material described
in Paragraph 2 hereof (hereinafter for convenience
sometimes referred to as "the material").  The material
is tentatively entitled "THE HEROES" and shall be
suitable for a motion picture intended primarily for
television exhibition, with a playing time of approxi-
mately thirty (30) minutes (hereinafter for convenience
sometimes referred to as the "program").  You hereby
accept such employment and agree to render your ser-
vices hereunder and devote your best talents, efforts
and abilities in accordance with our instructions and
directions, including, without limitations, instructions
and directions concerning matters involving artistic
taste and judgment.

2.  MATERIAL

(a)  Description.  The material shall be a
pilot teleplay.

(b)  Material To Be Written For.  The material
shall be written for our established episodic series
tentatively entitled "THE HEROES" (hereinafter referred
to as the "series").  The series is established because
it is based on a story the television rights to which
are owned by us.

In this connection, you agree that you have
no claim or right to separation of rights under Article
XX of the 1960 WGA Film Basic Agreement (ATPP-Independent)
(hereinafter referred to as the "WGA Agreement").

(c)  *Delivery of Material*.  You agree to deliver
the first draft teleplay to us on or before fourteen
(14) days from the date of this agreement.  We shall
have twenty-one (21) days in which to review the first
draft teleplay and to make one (1) request for changes
and revisions in said first draft teleplay; provided,
however, that if we make such request within fourteen
(14) days (including Sundays and Holidays) after the
submission to us of the first draft teleplay, we shall
be entitled to make a second request for changes and
revisions within seven (7) days (including Sundays
and Holidays) after the submission to us of the first
draft teleplay as initially revised.  The final draft
teleplay shall be delivered to us within ten (10)
days from the date we submit to you our final request
for such changes and revisions.

3.  COMPENSATION

As compensation in full for all of your services
to be rendered hereunder and as full consideration for the
rights granted to us with respect to all material written
or supplied by you hereunder, and for all of your undertakings
and covenants hereby assumed by you, and upon condition that
you shall perform all of the terms, conditions and covenants
of this agreement upon your part to be kept, observed or
performed, we agree to pay you as follows:

(a)  As full payment for the first television
run of the program in the United States, its territories
and possessions and Canada and any repeat broadcasts of
the program which are made as part of and in conjunction
with any Initial Sales (as defined in Exhibit A-1 and
A-2 in the printed edition of the WGA Agreement), Initial
Royalty in the amount of Four Thousand Five Hundred
Dollars ($4,500.00) payable in installments as follows:

(i)  Two Thousand Five Hundred Dollars
($2,500.00) following delivery of first draft
teleplay.

(ii)  Two Thousand Dollars ($2,000.00)
following delivery of final draft teleplay.

(b)  As full payment in perpetuity for any and
all television runs of the program throughout the world
other than those runs referred to in subparagraph (a)
above, Royalty Payments equal to the "Determined Royalty
Percentage" multiplied by the "Distributor's Residual
Gross" (both terms as defined in Exhibits A-1 and A-2
to the WGA Agreement).  Payment of said Royalty, state-
ments, and reasonable right of audit in connection
therewith (and frequency thereof) shall be made and

2.

determined by us in accordance with those reasonable accounting procedures employed by us subject, however, to a final determination by the Fact Finding Commission as provided for by said Exhibits A-1 and A-2 or as otherwise determined. Each statement rendered to you shall become final and binding twelve (12) months after such statement is rendered and you shall not have the right to question or dispute any item or matter contained in such statement subsequent to the expiration of said twelve-month period. In the event that the final determination referred to above establishes that the Royalty Payments we have made to you prior to such final determination are less than the Royalty Payments that would otherwise have been payable to you, we shall within sixty (60) days after such final determination pay to you the difference. In the event that such final determination establishes that such prior Royalty Payments are greater than the Royalty Payments that would otherwise have been payable to you, you hereby agree to repay to us such excess amount on demand, and without limiting out right to recover such excess amount from you we shall have the right to credit such excess amount against any subsequent Royalty Payments due you hereunder or against any other payments due you under this agreement or any other past, present or future agreement between us, including, without limitation, any payments due you under the agreement attached hereto as Exhibit C in the event that we exercise the option in Paragraph 15 hereof.

(c)   Provided that a series of television programs is sold from a pilot program based on the material entitled "THE HEROES" described in the Literary Purchase agreement to which this agreement is attached, we will pay you the following:

(i)   A payment as a bonus in the amount of Five Hundred Dollars ($500.00) for the initial broadcast of each new half-hour (1/2) episode of the series produced.

(ii)   A rerun payment of One Hundred Dollars ($100.00) upon each of the first five (5) reruns of each new episode (payment for the fifth rerun being deemed payment for all subsequent reruns) to be credited against the Royalty Payments described in subparagraph (b) above.

(iii)   Payment equal to ten percent (10%) of the net profits derived from the exploitation of the programs of the series, and subsidiary rights (exclusive of Music rights) as "net profits" are defined in Exhibit B attached hereto and by this reference made a part hereof.

Any participation in net profits payable to you pursuant to subsections (iii) above shall be credited against the additional compensation for reruns payable hereunder, and any payment on account of such additional compensation for reruns shall be credited against such participation; provided, that such crediting shall become operable only if you have received, from all sources, an amount equal to twice the applicable minimum compensation provided for in the WGA Agreement.

3.

Pages 4 and 5 omitted

Writer's TV Emplt. Agt.
O'M & M - 1  7/22/63

(d) xxx Advance for theatrical use $ _____.
No amount can be inserted in this subparagraph (c) unless the
Initial Royalty set forth in subparagraph (a) above is at
least twice the applicable minimum Initial Royalty set forth
in the WGA Agreement for the type of services to be rendered
hereunder. We agree to pay you the minimum sums required by
the WGA Agreement for the right to exhibit the program in
theaters and the like (without limitation) payable as, when
and to the extent required by the WGA Agreement. However,
any sums set forth above as "Advance for theatrical use"
shall be deemed an advance against the minimum sums required
pursuant to this subparagraph (c) for theatrical use.

(e) xxx Notwithstanding anything contained in sub-
paragraphs (b), xx (c)*of this Paragraph 3, if you do not
receive either or both story and teleplay screen credit on
the program, no Royalty Payments or additional compensation
shall be payable to you under either said subparagraph (b), xx
(c)*above. It is hereby understood and agreed that 75% of
the total Royalty Payments (excluding the Initial Royalty)
required to be made in connection with the program by the WGA
Agreement shall be attributable to the teleplay (or its equi-
valent) and 25% to the story (or its equivalent) and you shall
receive that part of the Royalty Payment attributable to the
story only if you receive screen credit for writing the story
and that part of the Royalty Payment attributable to the tele-
play only if you receive screen credit for writing the tele-
play. Regardless, however, of whether or not you are entitled
to any further compensation under either subparagraph (b), xx
(c)*of this Paragraph 3, we shall be entitled to all the
rights with respect to the material set forth in Paragraph 4
below. If either or both story and teleplay screen credit on
the program is shared by you with one or more writers (whether
or not as collaborators), then all the writers sharing such
credit shall be considered a unit and shall participate
equally in the portion of the Royalty Payment attributable to
the credit they receive and in the payments for theatrical
use provided for herein. Any payments received by you under
subparagraph 3 (d) above as an advance against additional com-
pensation for theatrical use, however, shall not be returnable.

(f) xxx If by reason of the services rendered by
you hereunder you become entitled to payments for exploita-
tion of television sequel rights as provided in Article XX of
the WGA Agreement or for exploitation of character rights as
provided in subparagraph (h) of Paragraph N of Article XVIII
of the WGA Agreement or by reason of the terms and conditions
of subparagraph (l) of Paragraph N of Article XVIII of the WGA
Agreement, we shall pay you the applicable minimum initial
compensation required to be paid by the WGA Agreement, when
and to the extent required by the WGA Agreement, for the first
television run of any program (with respect to which we are
required to make any such payment) in the United States, its
territories and possessions and Canada and any repeat broad-
casts of any such program which are made as part of and in con-
junction with Initial Sales. As full payment in perpetuity
for any and all television runs of any such program throughout
the world other than those runs referred to in the immediately

* or (d)

6.

Writer's TV Emplt. Agt.
O'M & M Rev. 8/64

preceding sentence, we shall pay you a Royalty Payment as
and in that proportion provided in Paragraph 1 of Exhibit
A-2 to the WGA Agreement.

4. RIGHTS.

(a) We shall be deemed the absolute and un-
qualified owner throughout the world in perpetuity of all
material written or supplied by you under this agreement,
and of the program and of the series, it being understood
that you act hereunder entirely as our employee and that
you shall have no right, title or interest in or to such
material, and that we shall have the right to obtain copy-
right and copyright renewals and other protection therefor.
Without limiting the generality of the foregoing sentence,
you hereby acknowledge and agree that we shall have the
absolute, unqualified and perpetual right throughout the
world to use and reuse the program and all material written
or furnished by you hereunder (whether or not in connection
with the program) in any and all media whether now known or
unknown and for any and all purposes, including without
limitation the right to rerun the program or portions there-
of on television an unlimited number of times anywhere in
the world (whether on so-called "pay" or "free" television)
and to exhibit the program theatrically an unlimited number
of times anywhere in the world.  You further agree upon
delivery of the material to execute, verify, acknowledge
and deliver a "Certificate of Authorship" of all such material
in the form of attached "Exhibit A" and any and all such
further instruments and documents, including, but not by
way of limitation, an "Assignment of All Rights" customarily
used in the television industry, as we shall deem necessary
or advisable to evidence, establish, maintain or defend our
rights in or to such material.  In this connection you
irrevocably appoint us your true and lawful attorney-in-fact
to execute, verify, acknowledge and deliver any and all
instruments or documents which you shall fail or refuse to
execute, verify, acknowledge or deliver .
        You agree that our requirement of you to sign any
such further instruments and/or documents shall not be construed
in derogation of our rights arising from the employer/employee
relationship set forth hereunder.

(b) Nothing contained in subparagraph 4 (a)
above or in Exhibit A attached hereto, however, shall be
deemed to deprive you of the minimum rights you may have under
Paragraph N of Article XVIII of the WGA Agreement or Article XX
of the WGA Agreement if the services rendered by you hereunder
entitle you to any of those minimum rights, it being agreed by
you that if you are so entitled to any such rights you are
entitled only to the minimum rights set forth in the WGA Agree-
ment.  If the services rendered by you hereunder entitle you
to the rights reserved to you under Article XX of the WGA
Agreement, you agree not to use nor to permit the use of any
of such reserved rights in violation of the provisions of
Article XX of the WGA Agreement, and we hereby reserve all
rights granted to us under said Article XX.

7.

Writer's TV Emplt. Agt.
O'M & M - 1  6/1/63

(c)  You agree that as between you and us, all
materials not furnished by you which are used on or in con-
nection with the program and all materials furnished by you
which are not subject to the WGA Agreement shall be our sole
and exclusive property for any and all purposes whatsoever
and you shall have no rights whatsoever to the same under
this agreement or otherwise.

5.  REPRESENTATION OF ORIGINALITY; INDEMNIFICATION.

(a)  You represent, warrant and agree that all
material written or supplied by you hereunder shall be wholly
original with you, except as to matters within the public
domain, and shall not infringe upon or violate any common law
or any other rights of any person, firm or corporation (sub-
ject, however, to the provisions of Article XV of the WGA
Agreement with regard to invasion of right of privacy).  You
further represent, warrant and agree that you have not pre-
viously made any use of nor permitted any person, firm or cor-
poration to make any use of the material written or supplied
by you hereunder.

(b)  You hereby agree to indemnify and to hold
us, our licensees, assigns and any other party claiming
rights through us, and our and their officers, agents and
employees, harmless from and against any and all, loss, lia-
bilities, actions, suits or other claims and any and all
damages, judgments, costs and expenses (including without
limitation reasonable attorneys' fees) arising out of the use
by us of the material written or supplied by you hereunder,
including, but not limited to, action, suits or other claims
for copyright infringements, plagiarism, literary piracy, un-
fair competition, violation of rights of privacy (subject to
WGA Agreement), misappropriation of rights, slander, libel,
or violation of any other rights of any person, firm or cor-
poration; but such indemnity shall not extend to changes or
additions made in the material by us.

(c)  Notwithstanding anything contained in sub-
paragraph 5 (b) above or in "Exhibit C" attached hereto, any
and all warranties, representations and indemnities shall
only apply to materials written or supplied by you hereunder.
We agree to indemnify you to the same extent as you are
required to indemnify us hereunder, with respect to any
material supplied by us to you for incorporation into the
material.

(d)  It is agreed that upon the presentation
of any claim or institution of any action to which this Para-
graph 5 applies, the party receiving notice of such claim or
the institution of such action will promptly notify the other
party in regard thereto.  We agree that the pendency of any
such claim or action shall not relieve us of our obligations
to pay you any monies due hereunder and we will not have the

8.

\* for any breach of warranty, Covenant or Condition of this
agreement, or for violation of the rights of third parties

Writer's TV Emplt. Agt.
O'M & M - 1   6/1/63

right to withhold such monies until we have sustained a
loss or suffered an adverse judgment or decree by reason
of such claim or action.

6.   NAME AND LIKENESS.

You hereby grant to us the right to use and
to grant others the right to use your name, likeness, bio-
graphy, picture, portrait and/or voice in connection with:
(a)   advertising and publicizing of any services you per-
form hereunder, the program and/or series, any television
station or network over which the program and/or series
are telecast, any sponsor or sponsors of the program and/
or series, and/or the products and services of any such
station, network, sponsor or sponsors, provided that such
use shall not be in the nature of a direct endorsement of
or testimonial for any such sponsor, product, service, sta-
tion or network; and (b) our institutional advertising and
the publication or any other use of the material.

7.   CHANGES.

We may make any changes in, deletions from
or additions to the material written or supplied by you
hereunder which we in our sole discretion may consider
necessary or desirable for our purposes; and you hereby
waive the benefits of any provision of law known as the
"droit moral" or any similar laws and agree not to insti-
tute, support, maintain or permit any action or lawsuit on
the ground that the material or any part thereof has been
defamed or mutilated or contains any unauthorized changes,
deletions or additions.

8.   PAY OR PLAY.

We shall be under no obligation actually to
use your services hereunder or any of the material written
or supplied by you hereunder, and if we do not use your ser-
vices hereunder or any of the material written or supplied
by you hereunder our obligation to you under this agreement
shall be fully discharged by payment to you of the compensa-
tion provided for in ~~the~~ Paragraph 3 ~~6~~ hereof.

9.   WRITING TEAM; COLLABORATION.

(a)   If the employment hereunder is for two
writers, as a writing team, the words "you" and "yours" as
used herein have reference to your joint and several ser-
vices and each and all of the obligations, agreements, re-
presentations and warranties made or undertaken by you and
each of you hereunder shall be and be deemed to be your
joint and several obligations, agreements, representations
and warranties.  All compensation payable to you hereunder,
in such cases, will be payable to you as a team of writers
and may be made by check payable to both of you or either

9.

Writer's TV Emplt. Agt.
O'M & M - 1  6/1/63

of you in the whole amount or in part, which check or checks may be delivered to either or both of you, and the payment so made shall constitute a full discharge of our obligations hereunder.  We shall not be obligated to provide for the division of any monies between you.  If the employment hereunder is for two writers as a writing team you hereby warrant and represent to us that prior to your employment hereunder you agreed in good faith to collaborate as a team.

(b)  You agree, if we request, to cooperate and collaborate with any other writer or writers whom we may, in our discretion, assign to work on the program; provided, however, that if we so request you to cooperate and collaborate with any other writer or writers, the compensation due you under subparagraph 3 (a) hereof will not be decreased by reason thereof.

10.  COMMUNICATIONS ACT.

Reference is made to Sections 317 and 508 of the Federal Communications Act making it a criminal offense for any person, in connection with the production or preparation of any program intended for broadcasting, to accept or pay any money, service or other valuable consideration for the inclusion of any matter as a part of any such program without disclosing the same to the employer of the person to whom such payment is made or to the person for whom such program is being produced.  You understand that it is our policy not to permit any employee to accept or pay any such consideration and you warrant, represent and agree that you have not accepted and will not accept, and have not paid and will not pay, any money, service or other valuable consideration for the inclusion of any "plug", reference, or product identification, or of any other matter, in any program in which you render services for us.

11.  WGA AGREEMENT.

Both for your benefit and for our benefit, this contract is subject to all of the terms and provisions of the WGA Agreement, to the extent the WGA Agreement applies to this contract, and to the extent the WGA Agreement applies to the material, we shall have all the rights in and to the material which we are permitted to have and acquire by the WGA Agreement.  To the extent that any part or parts of this agreement conflict with the WGA Agreement, such part or parts shall be and are hereby modified pro tanto and this agreement, as thus modified, shall be and is hereby confirmed by the parties hereto.  To the extent that it may be lawful for us to require you to do so, you agree to become and/or remain a member in good standing of Writers Guild of America as required by the provisions of the WGA Agreement.  If you fail or refuse to become or remain a member in good standing as required in the preceding

10.

Writer's TV Emplt. Agt.
O'M & M - 1  6/1/63

sentence, we shall have the right at any time thereafter
to terminate your services and all our obligations to you
hereunder without prejudice to any other rights we may
have hereunder for damages or otherwise by reason of such
failure, and without prejudice to our rights in the materi-
al, if any, delivered by you prior to such termination.
If you fail to comply with the provisions of this para-
graph by reason of failure to pay the dues required of you
to Writers Guild of America, we may, but shall not be obli-
gated to, pay such dues and deduct the amount thereof from
any compensation which may be or become payable to you
hereunder or under any other past, present or future agree-
ment between us.

    12.   CREDIT.

        We hereby agree to give you credit *to xxxxx
extent xxxequired xxand xin xthe xform xand xmanner xxprovided xin
Schedule xxx xxxxto xthe xxWGA xAgreement.

    13.   FORCE MAJEURE.

        If at any time prior to the completion of all
your services under this agreement our production opera-
tions or normal broadcasting operations are materially in-
terfered with by reason of any municipal, state or United
States law, ordinance, governmental order or other regula-
tion, or by reason of fire, strike, act of God or public
enemy, or by reason of inability to obtain necessary materi-
als, facilities, transportation, labor or cast or the fail-
ure of directors, actors or other key personnel to perform
their services, or by reason of any other similar or dis-
similar cause or occurrence not within our control, we may,
at our option suspend your services and all of our obliga-
tions hereunder for such time as such disability shall con-
tinue and no compensation shall be paid or become due to you
for such period.  It is agreed that your services and all of
our obligations hereunder shall resume when such disability
shall cease; provided, however, that should such period of
suspension continue for a period longer than six consecutive
weeks we shall have the right to cancel and terminate your
services and all of our obligations hereunder, and you also
shall have the right to terminate your services and all of
our obligations hereunder, unless we, within one week after
receipt of a notice from you of your intention to cancel
advise you that the period of suspension is at an end for
the purpose of this agreement.

    14.   TERMINATION.

        Should you at any time by reason of illness,
injury, accident or physical impairment be incapacitated or
prevented from performing any of your material obligations
hereunder at the times and in the manner provided, or should
you at any time fail, neglect or refuse (or should you or
your agent or other representative notify us that you intend

\* in each episode of the series (including the Pilot) on a separate card,
  as follows:

                    11.

    "Created By Bernard Fein and Albert S. Ruddy"

to fail, neglect or refuse) to perform any of your material
obligations hereunder at the times and in the manner herein
provided, then we may, in addition to and without prejudice
to any other remedies of any kind or nature, suspend your
services and all of our obligations hereunder during such
period of non-performance, or terminate your services and
all of our obligations hereunder upon the occurrence of any
such non-performance or at any time during any such suspen-
sion.

15.   SERVICES ON PROPOSED SERIES AND EXCLUSIVITY.

(a)   In the event of a sale of a series of
television programs to any network and/or sponsor,
Bernard Fein shall be employed by us to render his
~~exclusive~~ services as the associate producer of the
series upon all of the provisions of Exhibit C
attached hereto and by this reference made a part
hereof.   In this connection, commencing with the
date of this agreement and continuing ~~without~~ *for a period of one*
*year thereafter,* Fein agrees that
we will have first call on his ~~exclusive~~ services
and that Fein will make no commitment which will or
might interfere with his availability to us.

(b)   You agree that:

(i)   you will not write or contribute
to the writing of any teleplay, or comparable
work, which is similar or competitive to the
teleplay contemplated hereby; nor will you
knowingly permit the use, or commitment for
use, on television of any such work authored
or contributed to by you;

(ii)   you will not render services
in connection with any television program
sponsored by any person, firm, or corporation
whose product or service is competitive or
antithetical to the product or services of
any sponsor or sponsors who have a firm ~~written~~
~~or~~ agreement to rent, lease, license, or pur-
chase the series or any part thereof, and;



12.

(iii)  you will not give any endorsement on behalf of any product or service competitive or antithetical to the product or services of any sponsor or sponsors who have a firm ▓▓▓▓▓▓▓ agreement to rent, lease, license, or purchase the series or any part thereof.

It is agreed that the provisions of (ii) and (iii) immediately above shall not apply unless the sponsor or sponsors are identified to you by written notice from us.

16.  ASSIGNMENT.

We shall have the right to assign this agreement and any or all of our rights hereunder and we shall have the right to delegate any or all of our obligations hereunder; ~~and~~ gations ▓▓▓▓▓▓▓ we shall ▓▓▓ be relieved of our obli- ~~for complying~~ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ~~th and to~~ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ the ~~i extent~~ WGA Agreement, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. ~~netted in~~ ▓▓▓▓▓▓▓▓▓▓▓▓. This agreement is personal to you and you shall not have the right to assign this agreement or any of your rights hereunder nor the right to delegate any of your obligations hereunder.

17.  NOTICES.

All notices required to be given hereunder shall be given in writing by personal delivery, by mail or by tele- graph addressed to you at the address set forth at the beginning of this agreement and to us at the following address:

Bing Crosby Productions
9229 Sunset Boulevard
Los Angeles, California 90069

or such other addresses as may be designated in writing by registered mail by either party. Notice given by mail or by telegram shall be deemed given on the date of mailing thereof or of delivery of such telegram to a telegraph office, postage prepaid or to be billed.

18.  MISCELLANEOUS.

This agreement cannot be modified except by a writing executed by both of the parties to this agreement. Both you and we acknowledge that neither of us is entering into this agreement with reliance on any term or condition not stated herein and that this agreement replaces any and all prior agreements whether oral or written pertaining to the subject matter hereof.  This agreement shall be governed and construed under and in accordance with the laws of the State of California.  Paragraph headings are inserted here- in only for convenience and shall not be used to interpret any of the provisions hereof or given any legal or other effect whatever.  No waiver by us of any breach of any of the terms, conditions or warranties contained in this agree- ment shall be deemed to be a waiver of any preceding or succeeding breach of the same or any other term, condition or warranty.  Each and all of our several rights and remedies

13.

contained in or by reason of this agreement shall be construed as cumulative and no one of them as exclusive of the others or of any right or priority allowed by law or equity.

If the foregoing is in accordance with your understanding and agreement, please indicate your approval and acceptance thereof in the space hereinbelow provided for your signature.

Very truly yours,

BING CROSBY PRODUCTIONS

By _____

Saul C. Weisler
Vice President

APPROVED AND ACCEPTED:

_____
Bernard Fein

_____
Albert S. Ruddy

14.

# Exhibit "C"

1  ANTHONY R. SEGALL
   ROTHNER, SEGALL & GREENSTONE
2  510 S. Marengo Ave.
   Pasadena, California 91101
3  Telephone: (626) 796-7555
   Facsimile: (626) 577-0124
4  asegall@rsglabor.com

5
   HEATHER L. PEARSON
6  WRITERS GUILD OF AMERICA, WEST, INC.
   7000 W. Third Street
7  Los Angeles, California 90048
   Telephone: (323) 782-4521
8
   Attorneys for Complainant Writers Guild of America,
9  West, Inc.

10       BEFORE THE WRITERS GUILD OF AMERICA, WEST, INC. - PRODUCERS

11                      ARBITRATION TRIBUNAL

12

13  In the Matter of the Arbitration between     CASE NO. 11-SR-007
    WRITERS GUILD OF AMERICA, WEST, INC.,
14                                              NOTICE OF CLAIM
                    Complainant,               SUBMITTED TO
15                                              ARBITRATION AND CLAIM
    vs.
16
    QUALIA CAPITAL LLC AND RYSHER
17  ENTERTAINMENT, as successors in interest to BING
    CROSBY PRODUCTIONS,
18
                    Respondents.
19
    Relating to Separated Rights in *Hogan's Heroes*
20

21       **TO ALL PARTIES AND THEIR COUNSEL:**

22       **PLEASE TAKE NOTICE** that Complainant Writers Guild of America, West, Inc. ("WGAW" or

23  "Guild") submits the above-captioned Claim to arbitration pursuant to Article XIV(B) of the 1960 WGA

24  Television Film Basic Agreement ("1960 Television Agreement").

25       Pursuant to Article 14(A) of the 1960 Television Agreement, the WGAW, through its authorized

26  representative, Anthony R. Segall of Rothner, Segall & Greenstone, is prepared to meet with

27  respondents' authorized representative at any time within seven (7) days of respondents' receipt of this

28

                                              1

1   Notice. Should this dispute not be resolved at the meeting, or should respondents decline to participate,

2   the attached claim shall be submitted to a hearing before a neutral arbitrator to be selected by the parties.

3

4   The nature of the Claims referred to herein is as follows:

5

6   ## CLAIM

7   ### (Declaratory Relief)

8

9   1.      The WGAW was at all relevant times and is a labor organization and a party to the 1960

10  Television Agreement.  The WGAW was and is the exclusive bargaining representative of writers who

11  worked under the 1960 Television Agreement.

12

13  2.      The WGAW is informed and believes and thereon alleges that respondents Qualia Capital

14  LLC ("Qualia") and Rysher Entertainment ("Rysher") are the successors in interest to Bing Crosby

15  Productions ("BCP") with respect to certain rights relating to the television series *Hogan's Heroes* (the

16  "Series").  Qualia, Rysher and BCP are collectively referred to herein as "Respondents."

17

18  3.      On or about October 22, 1964, BCP hired Albert S. Ruddy ("Ruddy") and Bernard Fein

19  ("Fein") to write the original pilot teleplay for the Series.  Such pilot teleplay was based on an original

20  story and underlying literary property also written by Ruddy and Fein, and acquired by BCP at or around

21  the same date.  The acquisition of the story and underlying material and the writing services rendered by

22  Ruddy and Fein in connection with the pilot episode of the Series were at all times covered by and

23  subject to the terms of the 1960 Television Agreement.

24

25  4.      Based on the original pilot story and teleplay written by Ruddy and Fein, BCP produced

26  the Series, which was first broadcast in 1965 and remained on the air until 1971.  Ruddy and Fein jointly

27  received "created by" credit on all episodes of the Series.

28  ///

2

5.      As co-creators of the Series and co-writers of the original story and original pilot teleplay for the Series, Ruddy and Fein were entitled to separated rights in the Series pursuant to Article XX of the 1960 Television Agreement.  Such separated rights include the right to make a theatrical motion picture based on the Series, which is specifically enumerated as a reserved right in Article XX(2)(a). Respondents have never acquired any of the separated rights in the Series, and those rights continue to be owned and controlled by Ruddy and Fein (through his widow and heir, Kay Fein).

6.      Respondents, through their counsel, have asserted in writing that Ruddy and Fein were not entitled to and never acquired separated rights in the Series.  Accordingly, a present and actual controversy now exists as to whether Ruddy and Fein are entitled to separated rights in the Series.  By this Claim, the WGAW seeks a declaration resolving this controversy, as set forth more fully in the prayer below.

**PRAYER FOR RELIEF**

At the hearing of this arbitration, the WGAW shall seek the following relief:

a.      A declaration by the Arbitrator that Ruddy and Fein (through his widow and heir, Kay Fein,) own the separated rights in the Series, including but not limited to theatrical motion picture rights;

b.      An order requiring Respondents to disclose to the WGAW any exploitation or purported transfer of any of the separated rights in the Series taking place prior to the date of the Arbitrator's award;

///
///
///
///

c.     Such other and further relief as the Arbitrator deems just and proper.

ANTHONY R. SEGALL
ROTHNER, SEGALL & GREENSTONE

Date:  10.21.11              By: _____
                                  ANTHONY R. SEGALL

4

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV11- 9298 SVW (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Craig J. Mariam (SBN: 225280)
GORDON & REES LLP
633 W. Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone: (213) 576-5000 |
Facsimile: (877) 306-0043

Attorney for plaintiffs

ORIGINAL

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYSHER ENTERTAINMENT, INC.; QUALIA CAPITAL, LLC; BING CROSBY PRODUCTIONS, LLC<br><br><div align="right">PLAINTIFF(S)</div><br>V.<br><br>WRITERS GUILD OF AMERICA-WEST, INC.; ALBERT S. RUDDY, an individual; and KAY FEIN, an individual, as heir of BERNARD FEIN<br><div align="right">DEFENDANT(S).</div> | CASE NUMBER<br><br>CV11-09298 SVW (MANx)<br><br><br>**SUMMONS**<br><br>FAXED |

TO:DEFENDANT(S): <u>WRITERS GUILD OF AMERICA-WEST, INC.; ALBERT S. RUDDY, an individual; and KAY FEIN, an individual, as heir of BERNARD FEIN</u>

   A lawsuit has been filed against you.

   Within <u>21</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Craig J. Mariam</u>, whose address is <u>Gordon & Rees LLP, 633 W. Fifth Steet, 52nd Floor, Los Angeles, CA 90071</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: **NOV - 8 2011**

By: _____
   Deputy Clerk

   *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

American LegalNet, Inc.
www.USCourtForms.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a). PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| RYSHER ENTERTAINMENT, INC.; QUALIA CAPITAL, LLC; BING CROSBY PRODUCTIONS, LLC | WRITERS GUILD OF AMERICA-WEST, INC.; ALBERT S. RUDDY, an individual; and KAY FEIN, an individual, as heir of BERNARD FEIN |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Craig J. Mariam (SBN: 225280) GORDON & REES LLP 633 W. Fifth Street, 52nd Floor Los Angeles, CA 90071 Tel.: (213) 576-5000 | Fax: (877) 306-0043 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☒ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC 2201 et seq

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities – Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

CV11-09298

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

American LegalNet, Inc.
www.FormsWorkflow.com

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ No ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ No ☐ Yes
If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles - Rysher Entertainment, Inc. and Bing Crosby Productions, LLC | New York - Qualia Capital LLC |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles - All defendants | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles as to Declaratory Judgment Claim | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER):      Date  November 8, 2011
Craig J. Mariam

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com