UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Rysher Entertainment, Inc.; Qualia Capital, LLC; Bing Crosby Productions, LLC, | ) ) ) ) | CV 11-9298 SVW (MAN) Order Granting Defendants' Motion to Compel Arbitration [11] |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| Writers Guild of America, West, Inc.; Albert S. Ruddy; Kay Fein, as heir to Bernard Fein, | ) ) ) ) | JS - 6 |
| Defendants, | ) ) | |
| Writers Guild of America, West, Inc., | ) ) ) | |
| Counterclaimant, | ) ) | |
| v. | ) ) | |
| Rysher Entertainment, Inc.; Qualia Capital, LLC; Bing Crosby Productions, | ) ) ) ) | |
| Counterdefendants | ) ) | |

I. **INTRODUCTION**

On November 16, 2011, plaintiffs Rysher Entertainment, Inc.,

Qualia Capital, LLC, and Bing Crosby Productions, LLC ("BCP")[1] (collectively, "Plaintiffs") filed their First Amended Complaint in this Court, seeking declaratory relief that they own certain rights in a television series entitled "Hogan's Heroes." Plaintiffs named as defendants the Writers Guild of America, West, Inc. ("WGA"), Albert S. Ruddy, and Kay Fein, as heir to Bernard Fein (collectively, "Defendants"). On December 29, 2011, Defendant WGA filed the instant Motion to Compel Arbitration. (Dkt. 11).

## II. FACTUAL BACKGROUND

This action arises out of Plaintiff BCP's purchase of a literary work (entitled "The Heroes") written by Defendants Albert Ruddy and Bernard Fein (hereinafter, the "Writers"), and BCP's subsequent development of the television series "Hogan's Heroes" based on this literary work. (See FAC at ¶¶ 10-16). Both Plaintiffs and Defendants seek a declaration that have the right to (among other things) produce a motion picture based on the series. (See FAC ¶ 12; Motion, at 1). Defendant WGA seeks to compel arbitration of this dispute, pursuant to an arbitration clause in the operative collective bargaining agreement to which BCP and WGA were parties.

### A. The Agreements

#### 1. The Assignment Agreement

In 1963, Writers co-wrote a story entitled "The Heroes," upon which the subsequent television series "Hogan's Heroes" was based. (FAC, ¶ 10). On October 22, 1964, Bing Crosby Productions, Inc., the

---

[1] BCP is a wholly-owned subsidiary of Rysher Entertainment, LLC. (FAC, ¶ 5).

2

predecessor-in-interest to Plaintiff BCP,[2] purchased the rights to the "The Heroes" via a Letter Agreement (the "Assignment Agreement"). (Id. at ¶ 11). In executing the Assignment Agreement, Writers assigned "all of their right, title, and interest, in connection with 'The Heroes'" to BCP. (Id. at ¶ 11 & Exh. A).

### 2. Employment Agreements and the Independent Agreement

On October 22, 1964 – the same day that Writers executed the Assignment Agreement – Writers also entered into an employment agreement with BCP (the "Employment Agreement") "to render such services as [BCP] may require in connection with the writing and revision of . . . 'THE HEROES.'" (Gunn Decl., Exh. 2, at ¶ 1). On December 8, 1964, Writers entered into a second employment agreement with BCP "to render such services as we may require in connection with the writing and revision of . . . [the pilot script for 'Hogan's Heroes' entitled] 'The Informer.'" (Gunn Decl., Exh. 4, ¶ 1).

Both employment agreements expressly incorporated the terms of the 1960 Writer's Guild of America Television Film Minimum Basic Agreement (the "Independent Agreement"), a collective bargaining agreement to which both BCP and WGA were parties. (See Gunn Decl., Exh. 2 (Employment Agreement), ¶ 11 ("this contract is subject to all the terms and provisions of the [Independent Agreement]. [T]o the extent that any part or parts of this agreement conflict with the [Independent Agreement], such part or parts shall be and are hereby modified"); Gunn Decl., at Exh. 4 (second employment agreement), ¶ 11).

BCP does not dispute that both employment agreements incorporated

---

[2] Throughout this Order, the Court refers to both Bing Crosby Productions, Inc., and Bing Crosby Productions, LLC, as "BCP."

3

the terms of the Independent Agreement, or that BCP was a signatory to the Independent Agreement. (See FAC ¶ 14).

### B.  The Current Dispute

On October 21, 2011, WGA served a written arbitration claim on Rysher Entertainment, Inc, Qualia Capital, LLC,[3] and BCP, all of whom are Plaintiffs in the present action. (See FAC, Exh. 3). In the arbitration claim, WGA sought declaratory relief that, pursuant to the terms of the Independent Agreement, Writers held "'separated rights' in ["Hogan's Heroes"], including but not limited to theatrical motion picture rights." (FAC, Exh. 3, Prayer For Relief, ¶ a). "Separated rights are contractual rights in literary material, to which a writer may be entitled even where the producer owns copyright." (Motion, at 1) (citing Wagner v. Columbia Pictures, 146 Cal.App.4th at 593-94). Thus, while WGA concedes that Plaintiffs own the copyright in "The Heroes" pursuant to the Assignment Agreement, they nevertheless contend that Writers acquired "separated rights" in the television series "Hogan's Heroes" under the Independent Agreement.

Instead of responding to the arbitration claim, Plaintiffs filed the instant action in this Court, seeking declaratory relief that: (1) rights conferred by the Assignment Agreement are not subject to arbitration under the Independent Agreement; (2) BCP is the sole owner of all right, title, and interest in connection with "The Heroes" teleplay and any subsequent derivative works; and (3) Defendants have waived any arbitrable claims under the Independent Agreement by failing to follow the procedural requirements set forth in the Independent

---

[3] Qualia denies that it has any interest or right in "The Heroes." (FAC, ¶ 6). Therefore, WGA plans to withdraw its arbitration claim as to Plaintiff Qualia. (Motion, at 2, n.2).

4

Agreement. (FAC, Prayer For Relief).

Plaintiffs allege that "[t]he Assignment [Agreement] does not contain an arbitration clause and does not incorporate by reference any WGA bargaining agreement." (FAC, ¶ 11). Plaintiffs further allege that the Assignment Agreement provides that BCP has the "'absolute and unqualified right' to use ["The Heroes,"] including specifically the right to make a motion picture." (Id. at ¶ 12). Based on these allegations, Plaintiffs claim that the separated-rights dispute is not subject to arbitration, because it does not require interpretation of the Independent Agreement. (See Opposition, at 6).

WGA concedes that the Independent Agreement does not apply to the Assignment Agreement, but argues that "this is an irrelevant distinction – the [W]riters were BCP employees, and the claim regarding separation of rights arising out of the collective bargaining agreement [*i.e.*, the Independent Agreement] must be arbitrated." (Reply, at 8).

**III. DISCUSSION**

    **A.   Arbitrability**

"Federal law favors the arbitration of private labor disputes." United Food & Commercial Workers Union, Locals v. Alpha Beta Co., 550 F. Supp. 1251, 1253 (N.D. Cal. 1982) (citing Gateway Coal Co. v. United Mine Workers of America, 414 U.S. 368, 377 (1974); Brannon v. Warn Brothers, 508 F.2d 115, 119 (9th Cir.1974)). "The Supreme Court has stated unequivocally that the courts have no business determining the merits of a grievance under the guise of deciding questions of arbitrability under a collective bargaining agreement." United Food & Commercial Workers Union, Local 770 v. Geldin Meat Co., 13 F.3d 1365, 1368 (9th Cir. 1994) (citing United Steelworkers v. American Mfg. Co.,

5

363 U.S. 564, 569 (1960); AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649-50 (1986)).

Thus, in determining the applicability of an arbitration agreement, the Court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Orth Diagnostic System, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000); see also Winery, Distillery & Allied Workers Union, Local 186 v. E & J Gallo Winery, Inc., 857 F.2d 1353, 1358 (9th Cir. 2000).

The Court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.

**1. Agreement to Arbitrate**

In deciding whether a valid arbitration agreement exists, the Court applies governing state law. Here, California law applies. See First Options v. Kaplan, 514 U.S. 938, 944 (1995); accord Lowden v. T-Mobile USA, Inc., 512 F.3d 1213, 1217 (9th Cir. 2008) ("We apply state-law principles that govern the formation of contracts to determine whether a valid arbitration agreement exists."). In making this determination, "as with any contract, the parties 'intentions control, but those intentions are generously construed as to issues of arbitrability." Three Valleys, 925 F.2d at 1139 (citing Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)).

Here, BCP does not contest that it was a party to the Independent

6

Agreement at the time of the relevant transactions. Nor does BCP contest that the Employment Agreement expressly incorporates the terms of the Independent Agreement, including the arbitration clause, which provides for the arbitration of, among other things, "differences between the Union and the Producer concerning the interpretation of any of the terms of this Agreement." (Mittleman Decl., Exh 1, Art XIV(B)(1); Opposition, at 9).

Accordingly, the Court finds that a valid arbitration agreement exists, and turns to the second question: whether the arbitration clause in the Independent Agreement encompasses the dispute at issue.

### 2. Whether the Arbitration Agreement Encompasses the Dispute at Issue

As a general rule, courts are deferential to a labor union's attempt to enforce an arbitration clause in a collective bargaining agreement. See Steelworkers v. American Mfg. Co., 363 U.S. 564, 569 (1960). "[A]n order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Steelworkers v. Enterprise Wheel and Car Corp., 363 U.S. 574, 582-83 (1960). "Doubt should be resolved in favor of coverage." Id.

Here, the underlying dispute centers on whether Writers acquired "separated rights" in "Hogan's Heroes" pursuant to Article XX of the Independent Agreement, which provides, in part:

> Producer agrees that separation of rights, as Provided in Paragraphs 1 and 2 inclusive of this Article XX, shall be accorded to the writer of a story or a story and teleplay for any teleplay for any television film (other than one of an established serial or episodic series) provided that the terms of this Agreement relating to rights in material apply

7

> to such story or story and teleplay, as provided in Article II hereof. . . .
>
> * * *
>
> Writer shall retain all other rights (hereinafter referred to as the "reserved rights") not expressly referred to in Paragraph 1 of this Article including but not limited to dramatic, theatrical motion picture . . . and Producer shall only have the limited interest in such rights as hereinafter described.

(Mittleman Decl., Exh. 1, Art. XX).

With respect to arbitration, Article XIV(B) of the Independent Agreement provides:

> It is expressly understood and agreed that the following matters, and only the following matters, may be submitted to grievance and arbitration as herein provided:
> (1) **Any difference between the Union and the Producer concerning the interpretation of any of the terms of this Agreement and its application and effect** as determined by such interpretation.
> (2) Any alleged default or breach of any of the terms or provisions of this Agreement on the part of either party hereto. . . .

(Mittleman Decl., Exh. 1, Art. XIV(B) (emphasis added)).

WGA concedes that BCP holds copyright in "The Heroes" pursuant to the Assignment Agreement. Nevertheless, WGA claims that Writers contractually acquired separated rights in "Hogan's Heroes" under Article XX of the Independent Agreement.

Thus, the resolution of WGA's claim necessarily will depend (in whole or in part) upon the interpretation of Article XX of the Independent Agreement, which sets forth the circumstances under which separated rights "shall be accorded to the writer of a story and teleplay for any television film[.]" (Mittleman Decl., Exh. 1, Art. XX). Accordingly, this dispute falls squarely within the Independent Agreement's arbitration clause, which encompasses "[a]ny difference between the Union and the Producer concerning the interpretation of any of the terms of this Agreement and its application and effect as

determined by such interpretation." (Mittleman Decl., Exh. 1, Art. XIV(B)(1)). That the resolution of this dispute may *also* require consideration of the Assignment Agreement does not render it non-arbitrable. See generally Dean Witter Reynolds Inc. v Byrd, 470 U.S. 213, 216-18 (1985) (holding that even where arbitrable and nonarbitrable claims are "intertwined factually and legally," courts *must* compel arbitration of arbitrable claims when asked to do so).

### a.  Exclusion of "Individual Disputes"

Plaintiffs argue that this action cannot be arbitrated, because the Independent Agreement's arbitration provision excludes individual disputes between writers and producers. In support, Plaintiffs cite Article XIV(B)(2), which states that "[i]t is expressly understood and agreed that there is to be no grievance or arbitration of any individual disputes between the Producer and any writer." (Mittleman Decl., Exh. 1, Art. XIV(B)(2)). The following paragraph, however, provides that the "conduct of the Producer[,] which may be the basis of an individual dispute between the Producer and a writer[,] **may also be the basis for a dispute between the Producer and the Union**." (Id. (emphasis added)).

Here, the Union (WGA) – not the individual writers – brought the arbitration claim. It will be up to the arbitrator to decide whether WGA's claim on behalf of Writers is meritorious.

### b.  Exclusion of "Purchase Transactions"

Plaintiffs also argue that the Independent Agreement does not apply to the transactions at issue, because Article III(D) of the Agreement "excludes purchase transactions from coverage[.]" (Opposition, at 11-12). Article III(D) does not exclude such

1  transactions, however, where the Producer employs the seller to perform
2  additional services with respect to the literary material at issue.
3       This Agreement shall not cover, nor is it intended to cover:
       . . . .
4       any person who contracts to sell or license to the Producer
       rights of use or ownership of literary material **without**
5       **contracting to or performing personal services with respect**
       **to the revision, modification or changes in such literary**
6       **material**; provided, however, that . . .
       . . . .
7       if such person accepts such contract he shall be employed as
       an employee within the provisions of Paragraph A (a) and (b)
8       above.
9  (Mittleman Decl., Exh. 1, Art. D (b) (emphasis added)).
10      Here, it is undisputed that BCP employed the Writers to perform
11 additional services in connection with the writing and revision of both
12 "The Heroes" and "The Informer."  The Writers' October 22, 1964
13 Employment Agreement states:  "We hereby employ you to render such
14 services as we may require in connection with the writing and revision
15 of the literary material, ['The Heroes']."  (Gunn Decl., Exh. 2, ¶ 1).
16 The Writers' December 8, 1964 Employment Agreement similarly states:
17 "We hereby employ you to render such services as we may require in
18 connection with the writing and revision of the literary material,
19 ['The Informer']."  (Gunn Decl., Exh. 4, ¶ 1).
20      Thus, on its face, Article III(D) does not appear to preclude the
21 application of the Independent Agreement to the transactions at issue.
22 Moreover, this issue goes to the *merits* of WGA's claim (*i.e.*, whether
23 the Writers were "employees" of BCP, such that they could acquire
24 "separated rights" under the Independent Agreement), not to the
25 *arbitrability* of the claim in the first instance.  Accordingly, the
26 proper interpretation of Article III(D) is ultimately an issue for the
27 arbitrator to decide.
28

### c. Definition of "Writers"

Plaintiffs further argue that Article XX of the Independent Agreement does not apply to Writers, because they were not "'writers' of 'The Heroes' within the meaning of the Independent Agreement." (Opposition, at 8 (citing Mittleman Decl., Exh. 1, Art. I(k) (defining "writer")). Not only does this argument go to the merits (as opposed to the arbitrability) of Plaintiffs' claims, but the resolution of this issue clearly would require the interpretation of the Independent Agreement. Accordingly, it is encompassed by the Agreement's arbitration clause.[4]

### C. Procedural Waiver of Arbitration

In the alternative, Plaintiffs argue that WGA has waived its right to arbitrate this dispute by failing to follow the procedural

---

[4] Plaintiffs cite Granite Rock Co. v. Int'l Bhd. Of Teamsters, 130 S. Ct. 2847 (2010), for the proposition that "not every dispute tangentially involving a provision of a collective bargaining agreement requires 'interpretation' of the terms." (Opposition, at 6). Granite Rock is distinguishable. There, the Supreme Court held that the issue of when a collective bargaining agreement was ratified was a question for the district court, not the arbitrator, and thus did not require interpretation of the terms of the collective bargaining agreement. Id. at 2856-57. Here, the underlying dispute rests upon the proper interpretation of the Independent Agreement itself, not the date upon which it was ratified (or any other issue that is only "tangentially" involved in the interpretation of the Independent Agreement).

Ralph Andrews Productions, Inc. v. Writers Guild of America, West, 938 F.2d 128, 130 (9th Cir. 1991), cited by Plaintiffs, is also distinguishable. There, the court reasoned that a party "did not waive the right to an independent judicial examination of the question" at issue, because: (1) he "was not a party to the employment contract at issue"; (2) he "was not a party to the collective bargaining agreement"; and (3) he "clearly and unequivocally objected to being named a party to the arbitration." Id. at 130. Here, it is undisputed that BCP was a party to both the Independent Agreement and the Employment Agreement. (See FAC, Exh. B, ¶ 11).

11

requirements set forth in the Independent Agreement. (Opposition, at 14). However, "procedural questions related to substantive issues that are arbitrable under the [Independent Agreement] are for the arbitrator to decide." Toyota of Berkeley v. Auto Salesmen's Union, Local 1095, Etc., 834 F.2d 751, 754 (9th Cir. 1987); see also John Wiley & Son v. Livingston, 376 U.S. 543, 557 (1964) ("Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); Goss Golden West Sheet Metal, Inc. v. Sheet Metal Workers Int'l Union, Local 104, 933 F.2d 759, 764 (9th Cir. 1991) (holding that time requirements in an arbitration agreement are to be determined by the arbitrator).

Accordingly, the Court finds that Plaintiffs' procedural defenses are best left for the arbitrator to decide.

**D.   Stay of this Action pending Arbitration**

**1.   Plaintiff's Request for Discovery**

Discovery is appropriate in connection with a motion to compel arbitration where the information sought relates to "the making and performance of the agreement to arbitrate." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 726 (9th Cir. 1999). Here, Plaintiffs request additional discovery in order to ascertain the "timing and sequence of the parties' transactions." (Opposition, at 14). The purported factual issues identified by Plaintiff, however, relate to whether Defendants will succeed on the *merits* of their claims; they do not relate to whether this dispute is arbitrable in the first instance.

It is undisputed that BCP and Writers entered into the Employment

Agreement, which incorporated the Independent Agreement's arbitration provision, on October 22, 1964. (FAC ¶ 14; Motion, at 2); cf. Granite Rock Co. 130 S.Ct. at 2858 ("For the purposes of determining arbitrability, *when* a contract is formed can be as critical as *whether* it was formed.") (emphases in original). Moreover, as discussed above, because the resolution of Plaintiffs' claims will require the interpretation of the Independent Agreement, the arbitration provision clearly encompasses the dispute at issue.

Thus, further discovery is unwarranted.

### 2. Stay of this Action

The Court, "[u]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). Further, it is within the discretion of the Court to stay non-arbitrable claims, which are related to the arbitrable claims, pending the outcome of arbitration. See United States use of Newton v. Neumann Caribbean International, Ltd., 750 F.2d 1422, 1427 (9th Cir. 1985) (affirming stay of non-arbitrable claims pending outcome of arbitration). "A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962) (denying writ of mandamus to vacate stay pending the completion of related proceedings).

Here, Plaintiffs contend that even if this action is stayed as to Defendant WGA, the action should proceed against the Writers. Given

13

the degree to which Defendants' rights are interrelated, however, the interests of judicial economy (and the avoidance of potentially conflicting decisions) weigh strongly in favor of staying this action as to all Defendants.

**V.   CONCLUSION**

The Court GRANTS Defendant WGA's Motion to Compel Arbitration. This action shall be placed on the inactive calendar and STAYED pending arbitration. The parties are directed to inform the Court upon completion of the arbitration proceedings.

IT IS SO ORDERED.

DATED: March 19, 2012

STEPHEN V. WILSON

UNITED STATES DISTRICT JUDGE