UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Rysher Entertainment, Inc.;<br>Qualia Capital, LLC; Bing Crosby<br>Productions, LLC, | ) ) ) ) | CV 11-9298 SVW (MAN)<br><br>Order Granting Defendants'<br>Motion to Confirm Arbitration |
| Plaintiffs, | ) ) | [32], Denying Plaintiffs'<br>Motion to Vacate Arbitration |
| v. | ) ) | [31] |
| Writers Guild of America, West,<br>Inc.; Albert S. Ruddy; Kay Fein,<br>as heir to Bernard Fein, | ) ) ) | |
| Defendants, | ) ) | |
|  | ) | |
| Writers Guild of America, West,<br>Inc., | ) ) ) | |
| Counterclaimant, | ) ) | |
| v. | ) ) | |
| Rysher Entertainment, Inc.;<br>Qualia Capital, LLC; Bing Crosby<br>Productions, | ) ) ) | |
| Counterdefendants | ) ) | |

I.   **INTRODUCTION**[1]

On March 19, 2012, the Court ordered Plaintiffs Rysher
Entertainment, Inc., Qualia Capital, LLC, and Bing Crosby Productions,
LLC ("BCP")[2] (collectively, "Plaintiffs") to arbitrate a claim brought
by Defendant Writers Guild of America, West, Inc. ("Guild").  (Dkt.
24).  The arbitration claim sought declaratory relief that Albert Ruddy
and Bernard Fein (through Fein's heirs), the writers of the pilot
script entitled "The Heroes," continue to hold "separated rights" in
the television series entitled "Hogan's Heroes," which was derived from
the pilot.  These separated rights include the right to make a
theatrical motion picture based on the television series.  On July 31,
2012, the Court denied Plaintiffs' request for reconsideration of its
Order.  (Dkt. 30).

On March 1, 2013, the arbitrator issued an award in favor of the
Guild.  (Pearson Decl., Ex. A ("Award")).  The arbitrator held that the
Guild's claim was arbitrable, and granted the Guild's request for a
declaration that Ruddy and Fein possess separated rights in "Hogan's
Heroes."  (Id. at 18).  On March 18, 2013, the Guild filed a Motion to
Confirm the Arbitration Award, and also seeking attorneys' fees and an
order requiring Plaintiffs to execute a quitclaim assignment as to the
rights affected by the Award.  (Dkt. 31).  On the same day, Plaintiffs
filed a Motion to Vacate the Award.  (Dkt. 32).  For the reasons below,
the Motion to Confirm is GRANTED, and the Motion to Vacate is DENIED.

---

[1] As the parties are familiar with the underlying facts, the Court
will not repeat them here.  A more detailed recitation may be found
in the Court's prior Order granting the Writers Guild of America,
West, Inc.'s Motion to Compel Arbitration.  (See Dkt. 24).

[2] BCP is a wholly-owned subsidiary of Rysher Entertainment, LLC. (FAC
¶ 5).

## II.  LEGAL STANDARD

The parties seek judicial review of an arbitration award pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 et seq. ("section 301").  "Section 301 empowers this Court to review an arbitration conducted under the terms of a collective bargaining agreement."  <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 986 (9th Cir. 2001).

"[B]ecause federal labor policy strongly favors the resolution of labor disputes through arbitration, [j]udicial scrutiny of an arbitrator's decision is extremely limited."  <u>Matthews v. Nat'l Football League Mgmt. Council</u>, 688 F.3d 1107, 1111 (9th Cir. 2012) (internal quotation marks omitted).  The Supreme Court has instructed that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," the fact "that a court is convinced he committed serious error does not suffice to overturn his decision."  <u>United Paperworkers Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 38 (1987); <u>see also</u> <u>Steelworkers v. Enterprise Wheel & Car Corp.</u>, 363 U.S. 593, 596 (1960) (the "proper" judicial approach to a labor arbitration award is to "refus[e] . . . to review the merits").

Accordingly, the Ninth Circuit has stated that a federal court's "task is, in essence to review the procedural soundness of the arbitral decision, not its substantive merit."  <u>Hawaii Teamsters & Allied Workers Union, Local 996 v. United Parcel Service</u>, 241 F.3d 1177, 1181 (9th Cir. 2001).  "In cases such as this one which concern the interpretation of a collective bargaining agreement, 'courts have no business overruling [the arbitrator] because their interpretation of

the contract is different from his.'" Id. (quoting Enterprise Wheel, 363 U.S. at 599); see also Matthews, 688 F.3d at 1111 ("Arbitration awards are ordinarily upheld so long as they represent a plausible interpretation of the contract." (internal quotation marks omitted)).

Although judicial review of a labor arbitration award is limited, the Ninth Circuit has identified four instances in which the vacatur of an arbitration award under section 301 may be warranted: "(1) when the award does not draw its essence from the collective bargaining agreement; (2) when the arbitrator exceeds the scope of the issues submitted; (3) when the award runs counter to public policy; and (4) when the award is procured by fraud." Sprewell, 266 F.3d at 986 (internal citations omitted).  The burden of establishing grounds for vacating an arbitration award is on the party seeking to vacate the award.  U.S. Life Ins. v. Super. Nat. Ins. Co., 591 F.3d 1167, 1173 (9th Cir. 2010).  With these principles in mind, the Court turns first to whether vacatur is justified.

**III. DISCUSSION**

Plaintiffs urge that vacatur is necessary for three reasons: (1) the arbitrator exceeded his powers; (2) the arbitrator dispensed his own brand of industrial justice; and (3) the arbitration award exhibits evident partiality.  Upon examining these arguments, the Court concludes that none have merit.

**A.   Arbitrator Did Not Exceed His Powers**

The FAA provides that a court may vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4); Comedy Club, Inc. v. Improv West Assocs., 553 F.3d 1277, 1290 (9th Cir. 2009).  Arbitrators "exceed

4

their powers" when their award exhibits a "manifest disregard for the law" or "fails to draw its essence from the agreement" between the parties. Comedy Club, 553 F.3d at 1288-90. "[F]or an arbitrator's award to be in manifest disregard of the law, [i]t must be clear from the record that the arbitrator [ ] recognized the applicable law and then ignored it." Id. at 1290 (internal quotation marks omitted).

### 1. Remedy

Plaintiffs argue that the arbitrator exceeded his powers by awarding an "individualized remedy" to the writers in violation of the collective bargaining agreement ("Independent Agreement"). The award states that "the [Guild's] request for a declaration that Ruddy and Fein have separated rights in Hogan's Heroes is hereby GRANTED." (Award at 18). This award, Plaintiffs contend, contravenes Article XIV(B) of the Independent Agreement, which states:

> It is expressly understood and agreed that there is to be no grievance or arbitration of any individual disputes between the Producer and any writer and that no determination or decision made by . . . arbitration, as herein provided, shall affect the rights of the Producer as against any writer nor the rights of any writer as against the Producer in relation to their rights as against each other.

(Pearson Decl., Ex. B ("Independent Agreement"), Art. XIV(B)) (emphasis added). In Plaintiffs' view, by declaring that the writers have separated rights in the television show, the award grants the writers a right "as against the producer," BCP.

The arbitrator recognized the preceding provision in the award, but concluded that it could not be read in isolation. The arbitrator observed that Article XIV(B) goes on to state:

> **Notwithstanding the provisions of the preceding paragraph**, it is acknowledged and agreed that conduct of the Producer which may be the basis of an individual dispute between the Producer and a

5

```
                    writer may also be the basis of a dispute between
                    the Producer and the Union under the terms and
                    provisions of this agreement. It is further
                    acknowledged and agreed that in such circumstances:
                    . . .
                    (a)  The fact that conduct of the Producer which is
                    claimed to be a breach of this collective
                    bargaining agreement shall also be claimed by a
                    writer to constitute a breach of an individual
                    contract of employment between the Producer and
                    such writer, shall not preclude the Union from
                    pursuing grievance and seeking and obtaining
                    arbitration hereunder with reference to the dispute
                    between the Producer and the Union.
```

(Independent Agreement, Art. XIV(B)) (emphasis added).

The arbitrator interpreted this caveat to mean that "in a case where a writer has a dispute with a producer that implicates the Agreement, the matter is arbitrable." (Award at 17). The arbitrator thus reasoned that because Guild's claim that Plaintiffs breached the collective bargaining agreement "calls for an interpretation of the collective bargaining agreement," the Guild was "permitted to bring this grievance and the Arbitrator has jurisdiction to hear and resolve the grievance." (Award at 18). In resolving the claim, the arbitrator sided with the Guild's reading of the Independent Agreement, namely that the collective bargaining agreement confers upon the Writers separated rights in "Hogan's Heroes."

The arbitrator's decision reflected a plausible interpretation of the Independent Agreement. Although Article XIV generally forbids awards that affect the rights of writers against the Producer, it openly contemplates that this rule is inapplicable where, as here, the producer's conduct may form the basis of a dispute with both the writer and the union. Under such circumstances, the section immediately following the above-quoted passage, though not cited by the arbitrator, plainly authorizes arbitrators to render awards to the union, without

regard to whether they might affect the writer's rights:

> (b) The fact that Producer's conduct constitutes a breach of an individual contract of employment **shall not preclude . . . the arbitrators** from determining such conduct also constitutes a breach of Producer's obligations under this agreement **and making such award to the Union as they shall deem fair and equitable** within the powers granted to them by this Article.

(Independent Agreement, Art. XIV(B)) (emphasis added).  The arbitrator's decision did not display manifest disregard of the relevant provisions of the collective bargaining agreement.

Plaintiffs contend that allowing arbitrators to issue awards that affect the rights of writers "would render the entirety of Art. XIV(B) ¶ 8 completely meaningless in that the [Guild] could simply arbitrate *any* action ostensibly on behalf of non-party writers." (Pl. Opp. at 11).  This argument proves too much.  Article XIV(B) only permits unions to arbitrate disputes that concern the interpretation of the collective bargaining agreement, or any alleged breach thereof.  Thus, the Guild could not, for example, arbitrate a tort claim on behalf a writer against the producer if the tort did not involve an interpretation or violation of the collective bargaining agreement.

For the reasons above, the arbitrator did not exceed his authority in resolving the Guild's grievance over the interpretation of the collective bargaining agreement.

### 2.   Award Is Definite

Plaintiffs also argue that the award, which declares that the writers have separated rights in the television series "Hogan's Heroes," is too indefinite because it fails to specify the scope of material that is covered by the separated rights.  Plaintiffs stress that Writers Ruddy and Fein's contributions are limited to the pilot

script.  After the pilot aired, the show ran for several more seasons utilizing different writers who made their own unique contributions. Thus, in Plaintiffs' view, Writers Ruddy and Fein "have no rights as to those elements which they did not contribute to the series," and "no material created for the series after the pilot implicates separation of rights – the producer retains all rights for such material." (Mittleman Decl. ¶ 14).  For example, Plaintiffs note that Writers Ruddy and Fein did not create a major character in the television series, Sergeant Schultz, nor did they invent the eventual title of the television series, "Hogan's Heroes."

Preliminarily, the Court finds that the award is sufficiently definite.  An award is deemed final and definite if it resolves the issues submitted to arbitration "definitely enough so that the rights and obligations of the two parties, **with respect to the issues submitted**, do not stand in need of further adjudication." <u>Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.</u>, 157 F.3d 174, 176 (2d Cir. 1998) (emphasis in original).  The award need not resolve all issues that might arise in subsequent litigation – it need only resolve the issues submitted to arbitration.  <u>Id.</u> at 177.

In <u>Rocket</u>, the parties arbitrated issues regarding their respective rights under a license agreement for patented jewelry boxes, and whether either party had breached that agreement.  <u>Id.</u> at 175. They knowingly did not arbitrate the separate issue of whether the patent itself was valid and if so, the effect of the invalidity on the license agreement.  <u>Id.</u>  The arbitration panel issued an award for the licensor, which the district court confirmed.  On appeal, the Second Circuit held that the award was not "indefinite" by dint of not addressing patent invalidity.  <u>Id.</u>  The court reasoned that the issue

was never submitted to arbitration, and indeed the arbitration panel would have exceeded the scope of its authority by deciding it.  Because the award "resolved those issues over which the panel was given authority," it was sufficiently final and definite.  Id. at 177.

Decisions applying Rocket are also instructive.  In Huntington Hosp. v. Hungtington Hosp. Nurses' Ass'n, 302 F. Supp. 2d 34 (E.D.N.Y. 2004), the hospital hired two new nurses by offering to boost their salaries by a "longevity credit" that would account for their prior twenty years and fifteen years of experience, respectively.  Id. at 37. When the union discovered this practice, the union brought the hospital to arbitration to determine whether the hospital violated the collective bargaining agreement when it credited more than ten years' worth of experience in calculating the nurses' respective salaries. The arbitrator issued an award requiring the hospital to "take the necessary action to roll back whatever prior service credit it unilaterally granted [the nurses] in excess of that to which [the CBA] entitled them and to recover the illegal overpayments made to them." Id. at 39.  The hospital moved to vacate the award, arguing that the award "contemplates further litigation and therefore renders the award lacking in finality and definiteness."  Id. at 42.  Applying Rocket, the district court rejected this argument, reasoning that the arbitrator had finally resolved the narrow dispute at issue, whether the longevity credits made to the nurses violated the CBA.  "Where . . . the arbitrator has disposed of the issues presented, the fact that further litigation may be necessary does not constitute a ground for vacating the award."  Id.

In this case, the arbitration award is sufficiently definite. Although the Award does not define the precise contours of "separate

rights," that was not the question presented.  Rather, the question submitted to the arbitrator, and what the Award makes clear, is that the Writers *possess* separated rights under the Independent Agreement, whatever that bundle of rights includes.  Where, as here, the arbitrator has finally disposed of the issue presented, the possibility that the parties may disagree about the contents of these rights as defined by the Independent Agreement or industry practice does not warrant vacating the award for indefiniteness.  Hungtingon, 302 F. Supp. at 42.  See also Maul v. Aznavoorian, No. C 96-2965 TEH, 1997 WL 16313, at *2 (N.D. Cal. Jan. 9, 1997) (where award directed party to sell her interest in real property, but did not specify the terms and conditions of the sale, award was not fatally indefinite because "the sale or assignment ought transpire pursuant to the conventional business practices and customs of purchasing and selling real estate interests or pursuant to ordinary negotiation and approval").  Indeed, given that the Independent Agreement itself does not define the precise scope of "separated rights," the arbitrator would have exceeded his authority in interpreting the CBA by attempting to articulate the exact contents of these rights.  See Rocket, 157 F.3d at 177.

Further, this case is distinguishable from the ambiguous award discussed in Americas Ins. Co. v. Seagull Compania Naviera, S.A., 774 F.2d 64 (2d Cir. 1985).  There, the arbitrators issued two cross-awards, one in favor of each arbitrating party against the other, but were silent as to whether these sums could be set off against each other.  Because neither side could explain the arbitrators' intent, the Second Circuit vacated the award for indefiniteness.  Here, in contrast, there is no confusion about how the arbitrator resolved the question submitted: the parties agree that the arbitrator concluded

that the Writers have separated rights.

Furthermore, and in any event, Plaintiffs have waived their indefiniteness argument by failing to raise it before the arbitrator. "It is ... well settled that defects in proceedings prior to or during arbitration may be waived by a party's acquiescence in the arbitration with knowledge of the defect." Order of Ry. Conductors and Brakemen v. Clinchfield R. Co., 407 F.2d 985, 988 (6th Cir. 1969); Zingg v. Dep't of Treasury, IRS, 388 F.3d 839, 843 (Fed. Cir. 2004) (holding that a party "cannot challenge upon appeal what [it] failed to challenge before the [arbitrator] .... Therefore, in the face of [the party's] failure to make such arguments earlier, we will not consider any error in the [arbitrator's] decision based on this argument, for it is deemed waived.").

In reviewing the Plaintiffs' Closing Brief and Objection to the Guild's Appendix, the Court detects no developed argument challenging the specific components of the separated rights at issue.  Nor is the Court persuaded by Plaintiffs' counsel's statement during the hearing that "[e]ven if [the writers] had separated rights, they don't have separated rights to the title; don't have separated rights to the additional characters, they don't have separated rights to the name." (Mariam Reply Decl., Ex. B at 31).  This passing reference fails to establish that the issue was even disputed, much less that it was properly presented to the arbitrator for final resolution. Accordingly, the award is not indefinite.

### 3.   Application of Law

Plaintiffs further argue that the arbitrator ignored controlling law by misapplying Cal. Civ. Code § 1642 and the applicable statute of limitations.  To repeat, "for an arbitrator's award to be in manifest

disregard of the law, it must be clear from the record that the arbitrator recognized the applicable law and then ignored it." Matthews, 688 F.3d at 1115 (internal quotation marks omitted). Further, "[t]he governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable." Carter v. Health Net of Cal., Inc., 374 F.3d 830, 838 (9th Cir. 2004) (internal quotation marks omitted). "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the [FAA]." Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 994 (9th Cir. 2003) (en banc).

### i.   Cal. Civ. Code § 1642

Plaintiffs argue that the arbitrator misapplied Cal. Civ. Code § 1642 by treating the Purchase Agreement of the pilot script and the subsequent Employment Agreement for revisions of the pilot as one document.  Section 1642 states that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."  Plaintiffs contend that the arbitrator's reliance on section 1642 to read the two separate contracts as one document was erroneous because section 1642 should only be applied to resolve an ambiguity in either or both of the documents.

The Court need not delve into the merits of this argument because section 1642 was a supplemental basis at best for the arbitrator's decision that the Independent Agreement covered the pilot script.  In reaching that conclusion, the arbitrator relied chiefly on his examination of the plain text of Article III.D of the Independent Agreement.  Plaintiffs do not challenge the arbitrator's analysis of

Article III.D.   Thus, even if the arbitrator misapplied § 1642, his decision would still be supported by Article III.D.   Accordingly, the arbitrator did not exceed his powers and the award does not fail to draw its essence from the Independent Agreement.

### ii.   Statute of Limitations

Plaintiffs contend that the arbitrator committed "manifest errors" in determining the date on which the Guild was on notice of its potential grievance, and in selecting the appropriate statute of limitations.   First, the arbitrator found that the underlying contracts which would have put the Guild on notice of the claim regarding separated rights were not in the Guild's possession until the fall of 2011.   (Award at 14).   Plaintiffs argue that the Guild was on notice of the potential claim for separated rights as early as 1964 because it had the December 1964 (the second Employment Agreement) contract along with information that the Writers had received a "story by" credit on the pilot.   However, the arbitrator implicitly held that such information was insufficient when he noted that "without the contracts the [Guild] would not be in a position to determine that there had been a violation of the Agreement."   Plaintiffs fail to identify any manifest error in the arbitrator's reasoning that the original contracts in October 1964 were necessary to give the Guild notice of its claim.   Accordingly, the Court does not second-guess the arbitrator's factual finding that the Guild was on notice beginning in the fall of 2011.   Moreover, because the Guild filed the instant claim on October 21, 2011, it would have filed timely regardless of whether the statute of limitations was 18 months, as the arbitrator stated, or six months, as Plaintiffs contend.   Thus, the arbitrator's analysis of the statute of limitations did not constitute manifest error.

## B.   Arbitrator Did Not Dispense Industrial Justice

Plaintiffs next argue that the arbitrator dispensed his own brand of industrial justice because his decision neglected to reference Article II of the Independent Agreement.  Plaintiffs assert Article II is crucial to the separated rights analysis because of its place in the following provision:

> Producer agrees that separation of rights . . . shall be accorded to the writer of a story or a story and teleplay for any television film (other than one of an established serial or episodic series) provided that the terms of this Agreement relating to the rights in material apply to such story or story and teleplay, **as provided in Article II hereof.**

(Independent Agreement, Art. XX) (emphasis added).

This argument is meritless.  Article II sets the effective dates for coverage of the 1960 Independent Agreement.  Given the arbitrator's uncontroverted conclusion that the 1964 purchase of the original literary material, coupled with the rewrite, gave rise to covered employment under Article III, it was obvious that such employment in 1964 fell within the time limits under Article II.  The arbitrator's omission of this minor point does not suggest he delivered his own brand of justice, especially given that he engaged in detailed analysis of the other, more relevant sections of the Independent Agreement.

## C.   Award Does Not Exhibit Partiality

Plaintiffs lastly argues that the arbitrator was partial to the Guild because (1) he failed to disclose until after his appointment that he previously served as legal counsel to the Guild; (2) he failed to disclose until arbitration commenced that his former law partner used to be legal counsel to the Guild; and (3) he essentially ignored all of Plaintiffs' evidence.

"To show 'evident partiality' in an arbitrator, [Plaintiffs] either must establish specific facts indicating actual bias toward or against a party or show that [the arbitrator] failed to disclose to the parties information that creates '[a] reasonable impression of bias.'" Lagstein v. Certain Underwriters at Lloyd's, London, 607 F.3d 634, 645-46 (9th Cir. 2010) (quoting Woods v. Saturn Distribution Corp., 78 F.3d 424, 427 (9th Cir. 1996)).

To begin, Plaintiffs have waived the evident partiality argument with respect to the arbitrator's failure to disclose. The Ninth Circuit has long held that "a party with constructive knowledge of potential partiality of an arbitrator waives its right to challenge an arbitration award based on evident partiality if it fails to object to the arbitrator's appointment or his failure to make disclosures until after an award is issued." Fidelity Federal Bank, FSB v. Durga Ma Corp., 386 F.3d 1306, 1313 (9th Cir. 2004); Marino v. Writers Guild of Am., East, Inc., 992 F.2d 1480, 1484 (9th Cir. 1993) ("[I]t is well settled that a party may not sit idle through an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse. This rule even extends to questions, such as arbitrator bias, that go to the very heart of arbitral fairness.") (internal citation omitted). Plaintiffs reply papers do not oppose, and thereby concede, that they failed to timely object when they discovered the arbitrator's alleged failures to disclose information. Accordingly, these claims are waived.

Even if Plaintiffs' nondisclosure arguments were not waived, however, the Court would conclude that they fail to give rise to an impression of bias. Plaintiffs' objection is based on the fact that

over 24 years ago, both the arbitrator and his former law partner had at different times represented the Guild on matters unrelated to the instant claims.  (Mariam Decl., Ex. 7).  The Ninth Circuit has recognized, however, that "courts have rejected claims of evident partiality based on long past, attenuated, or insubstantial connections between a party and an arbitrator." New Regency Prods., Inc. v. Nippon Herald Films, Inc., 501 F.3d 1101, 1110 (9th Cir. 2007) (citing Positive Software Solutions, Inc. v. New Century Mortgage Corp., 476 F.3d 278, 284 (5th Cir. 2007) (en banc) (collecting cases)).  Pertinent here, the D.C. Circuit has refused to vacate an award where the arbitrator failed to disclose that his former law firm represented a party to the arbitration on unrelated matters.  See Al-Harbi v. Citibank, N.A., 85 F.3d 680, 682 (D.C. Cir. 1996).  Similarly here, the fact that the arbitrator and his former law partner represented the Guild more than twenty years ago is too remote a connection to give rise to a reasonable impression of bias.  Moreover, any link between the arbitrator and the Guild is further attenuated by the fact that after representing the Guild, the arbitrator spent 14 years as in-house counsel for Sony Pictures, where he practiced adverse to the Guild in collective bargaining negotiations, grievances, and arbitration.  (Mariam Decl., Ex. 7).[3]

    With respect to the arbitration award's treatment of Plaintiffs'

_____

[3] Plaintiffs' reliance on Schmitz v. Zilveti, 20 F.3d 1043 (9th Cir. 1994), is misplaced.  There, the Ninth Circuit vacated an award where the arbitrator's law firm had represented the parent company of a party to the arbitration in at least 19 cases over a period of 35 years, the most recent having ended approximately 21 months before the arbitration was submitted.  Id. at 1044.  Unlike Schmitz, the arbitrator in this case represented the Guild more than 20 years ago, and thereafter worked adverse to the Guild for 14 years.  Such facts do not warrant the same result as in Schmitz.

evidence and arguments, the Court perceives no signs of actual bias. That the award omits reference to Plaintiffs' expert does not suggest bias where the award also does not cite Defendants' expert. Further, each section of the award discusses both the Plaintiffs' and the Defendants' respective positions before reaching a decision. (Award at 8:14-17, 9:8-12, 10:17-18, 11:5-9, 13:2-14, 14-17). Thus, this case is distinguishable from cases where the arbitrator "totally disregarded" one party's arguments, Pacific & Arctic Ry. & Navigation Co. v. United Transp. Union, 952 F.2d 1144, 1149 (9th Cir. 1991), or refused to even hear a party's evidence, Gulf Coast Indus. Workers Union v. Exxon Co., USA, 70 F.3d 847, 850 (5th Cir. 1995). While Plaintiffs complain that the arbitrator did not cite the sworn testimony of the Writers or that of Patrick Gunn, Plaintiffs fail to cite any authority that holds that an arbitrator must cite every piece of evidence a party deems relevant. In any event, this case pales in comparison to those in which courts have expressed real concern over actual bias, involving, for example, "an arbitrator's financial interest in the outcome of the arbitration, an arbitrator's ruling on a grievance that directly concerned his own lucrative employment for a considerable period of time, a family relationship that made the arbitrator's impartiality suspect, the arbitrator's former employment by one of the parties, and the arbitrator's employment by a firm represented by one of the parties' law firms." Toyota of Berkeley v. Automobile Salesmen's Union, Local 1095, 834 F.2d 751, 756 (9th Cir. 1987) (internal collection of cases omitted).

    In sum, the Court concludes that Plaintiffs' have failed to demonstrate that the arbitrator displayed evident partiality. Because Plaintiffs have failed to carry their heavy burden to provide a reason

to vacate the award, the award is CONFIRMED.

**D.   ATTORNEYS' FEES**

Defendants request attorneys' fees incurred in litigating the post-arbitration motions.  A court may assess attorneys' fees in the context of post-arbitration litigation "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  <u>Int'l Union of Petroleum & Industrial Workers v. Western Industrial Maintenance, Inc.</u>, 707 F.2d 425, 428 (9th Cir. 1983).  "[A]n unjustified refusal to abide by an arbitrator's award may equate [to] an act taken in bad faith, vexatiously or for oppressive reasons."  <u>Id.</u>

The Court cannot conclude that Plaintiffs' skepticism of the arbitrator's award was in bad faith.  Although the Court noted prior to compelling arbitration that Plaintiffs had created needless delay, this does not necessarily prove that they acted in the same spirit after arbitration.  Moreover, the Court is mindful that in its Order denying reconsideration, it arguably invited the parties to litigate the enforceability of the remedy chosen by the arbitrator.  (Dkt. 30 at 10-11).  Accordingly, Defendants' request for attorneys' fees is DENIED.

**E.   QUITCLAIM**

Finally, Defendants request the Court to order Plaintiffs to quitclaim an assignment of the separated rights at issue in the Award to the writers.  Defendants base their request upon Article XXII of the Independent Agreement, which states that "Producer agrees to execute and deliver to writer an assignment under the copyright of all rights in the copyright reserved or which may revert to writer pursuant to the provisions hereon, such assignment to being the form of a quitclaim."  Defendants express concern that Plaintiffs will continue to avoid cooperating, and therefore invite the Court to preemptively order

Plaintiffs to comply with Defendants' reading of the Independent

Agreement.   The Court declines to issue such an order because it is

premature at this time.

**IV.   CONCLUSION**

        For the foregoing reasons, Defendants' Motion to Confirm

Arbitration Award is GRANTED and Plaintiffs' Motion to Vacate

Arbitration Award is DENIED.   Defendants' requests for attorneys' fees

and for a quitclaim order are DENIED.


        IT IS SO ORDERED.


DATED:  July 30, 2013

                                        _____

                                              STEPHEN V. WILSON

                                        UNITED STATES DISTRICT JUDGE